EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| USA | CRIMINAL ACTION 05-074T |
| VS. | DECEMBER 16, 2005 |
| WILLIAM J. BENNETT | PROVIDENCE, RI |

HELD BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF JUDGE

**(SENTENCING)**

APPEARANCES:

FOR THE GOVERNMENT: ZECHARIAH CHAFEE, AUSA
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: KEVIN J. FITZGERALD, AFD
Federal Defender's Office
10 Weybosset Street
Providence, RI 02903

Court Reporter: Angela Reynolds, RPR-FCRR
One Exchange Terrace
Providence, RI 02903

THE COURT: Good morning.

THE CLERK: This is Criminal Action 05-74T, United States of America versus William Bennett.

THE COURT: This case is here for sentencing, Mr. Bennett having previously pled guilty to a charge of being in possession of a firearm after having previously been convicted of a felony.

Mr. Fitzgerald, Mr. Bennett, have you both had an opportunity to review and discuss the presentence report?

MR. FITZGERALD: Yes, your Honor.

THE DEFENDANT: Yes, your Honor.

THE COURT: You may be seated.

As I understand it, the only issue here, there was an objection filed to the presentence report by the defendant. There's been no objection by the Government; is that right, Mr. Chafee?

MR. CHAFEE: That's right, your Honor.

THE COURT: And the issue presented is whether Mr. Bennett is an armed career offender within the meaning of the guidelines or, this is a related question, whether he is subject to the mandatory minimum sentence that is prescribed by Title 18, Section 924(e). I want to start with the question -- first of all, is that the only objection,

Mr. Fitzgerald?

MR. FITZGERALD: That's correct, your Honor.

THE COURT: Okay. I want to start with that question, and it seems to me that the real issue here is whether the offense referred to in paragraph 35 of the presentence report, which describes the offense simply as a breaking and entering -- or conviction under the statute that prohibits breaking and entering into other buildings with intent to commit larceny, whether that is a violent felony within the meaning of Section 924(e), and depending on the answer to that question, we may or may not get to the question as to whether it is a violent felony within the meaning of the guidelines, Section 4B1.4(b)(3)(B). They are slightly different definitions, as I'm sure counsel are aware, in that, under the guidelines, in order to be a burglary considered as a violent felony, it must be either a breaking and entering into a dwelling or it must be a breaking and entering that otherwise presents a serious risk of bodily injury to another. Whereas under the statute, as interpreted by the Supreme Court in *Taylor*, there is no requirement that the place broken into be a building. What's required is that there be a breaking and entering into some type of structure and that the breaking and entering be done

with the intent to commit a crime.

So let's start with the question as to whether or not 924(e) applies, whether this a violent felony, whether paragraph 35 describes an offense that is a violent felony within the meaning of 924(e).

And before you address that question, counsel, I would note that you have submitted two memoranda, Mr. Fitzgerald. One was submitted some time ago, but one was submitted, I think, only yesterday. I, frankly, have not had an opportunity to read that memorandum, so anything that you put in that memo, you're going to need to discuss today, and both counsel should be aware that, if you don't already know it, under the new Local Rules that go into effect on January 1, the same principle applies to memoranda, objections and so forth, that they have to be submitted in a timely manner or they won't be considered.

Now, the first thing I'd like to clarify before you address this question is what that offense involved, the offense described in paragraph 35. The presentence report, as I said, simply refers to it as breaking and entering into other buildings with intent to commit larceny, and it says there was no further information regarding the facts of this offense. Yet, I believe it was you, Mr. Fitzgerald, that said

somewhere in something you filed, that the other building was on outbuilding of some sort or a shed.

MR. FITZGERALD: That's correct, your Honor.

THE COURT: Is there any dispute about that?

MR. CHAFEE: No, your Honor.

THE COURT: All right. Well, let's start with you, Mr. Chafee. It's the Government's burden to show that this offense was a violent felony. What do you have to say on that score?

MR. CHAFEE: Well, we start with *Taylor*, your Honor. The Supreme Court ruled that the plain meaning of burglary as intended in 924(e), that is, coming under the generic term "violent felony," is intended by Congress as a generic burglary; i.e., in the sense in which the term is used in most states' criminal code.

And *Taylor* actually says that it has the basic elements of, quote, "unlawful or unprivileged entry into or remaining in a building or other structure with intent to commit a crime therein." That's the definition, according to *Taylor*.

So the next question is whether -- is how one determines whether the crime to which the defendant admitted guilt or pleaded nolo contendere fit that definition, and the Court in Shepard ruled that the sentencing court should look at the statutory

definition, and/or a charging document, and/or a written plea agreement, and/or a transcript of the plea colloquy or any explicit factual finding by the judge to which the defendant assented.

In the instant case, we have the transcript of the plea colloquy, we have the statutory definition, and we have -- well, those are the two major things. Also -- well, let's start with those.

In the instant case, the transcript of the plea colloquy reveals that the defendant specifically agreed that he entered a steel storage shed with intent to commit larceny. That's on page six and seven of the transcript. And I -- both Mr. Fitzgerald and I have attached that transcript, and I call your Honor's attention to page six in the middle referring to that case on 94-0326-A, the State -- this is the prosecutor setting forth what he could prove at trial. "The State would be prepared to prove that on November 10, 1994, this defendant entered a steel storage shed in Hopkinton belonging to Jeff R. Noone with intent to commit larceny in the nighttime." And Mr. Bennett is asked, "You have heard what the attorney" -- the court asked him this, "Mr. Bennett, you have heard what the attorney for the State has just recited, do you agree that if, in fact, these matters did go to trial that

the facts she has recited could be proven against you?" And he says, "Uh-huh." The Court says, "You do or you don't?" "Yeah." The Court: "You do, Mr. Bennett? Is that a yes?" "Yes."

So he has agreed to plead guilty, that he is pleading guilty to a crime involving those facts, and those facts fit exactly what *Taylor* was talking about.

So there is the plea colloquy. You know, it's a steel storage shed, and that is a building, with the intent to commit larceny in the nighttime, and that would fit to me. Mr. Fitzgerald is contesting whether it is a building or other structure, and that is a shed, now that is a building or other structure. *Taylor* makes no requirement that such structures be intended for occupancy.

Mr. Fitzgerald is arguing that it does not fit under *Taylor* because such a structure does not present a serious risk of potential harm to anyone because a shed is never intended to be occupied, but that's not what *Taylor* says. *Taylor* doesn't make that restriction. In fact, in *Taylor*, the Court specifically rejected the limiting of the concept of generic burglary to the common law element of dwelling. So *Taylor* rejected that. *Taylor* gave it more of a definition, which this fits.

Furthermore, just as a practical matter, it seems to me that the owner of the items stored in the storage shed would, of course, enter such a shed to either remove such items for use or add new items for storage. So it would be, at times, have somebody in it. It seems hard to see how it could be otherwise. So the defendant is wrong on the law and on the fair inference to be drawn from the facts.

Furthermore, the judgment of conviction, Count I, B & E of a building with intent to commit larceny, that's what he is found guilty of, and that's what the facts in the plea colloquy show, and that's how the Court refers to the crime in the course of the plea proceeding.

And on page three, the Court in his plea says, toward the bottom of the middle of the page on page three of the plea colloquy, "You're asking to enter a nolo plea on those two counts, W294-326A, which charges you with breaking and entering. What's this other indication, Mr. Brousseau?" Mr. Brousseau: "Breaking with intent to commit larceny, your Honor." The Court: "You're also asking to enter a nolo plea on that."

I just see that this fits hand in glove with the *Taylor* definition, your Honor.

THE COURT: All right. Mr. Fitzgerald?

MR. FITZGERALD: Your Honor, I apologize for the short notice with the information I sent to the Court yesterday. It's not additional argument, but there are a number of cases that were attached to that memorandum, and I can speak to them from here without the Court needing to read the memo.

Your Honor, in *Taylor*, in that section in *Taylor*, it doesn't say that if a crime has these elements that it is a violent crime. It says that the violent crime would have these two elements in it, could have these two elements in it.

What I think that means is that a crime that has those two elements may not be a violent crime as well. It has to at least have those two elements, but it may not be a crime of violence.

THE COURT: Well, it says that generic burglary would qualify as a violent felony, and that what generic burglary is is an offense that includes those two elements.

MR. FITZGERALD: That's correct, but I think that there are other crimes that have those two elements that may not be violent crimes.

THE COURT: Right. But not burglaries.

MR. FITZGERALD: Not burglaries. The cases that I sent in, looked at a number of different breaking and

entering statutes and burglary statutes, both in the First Circuit and in other circuits, and it's not clear that every breaking and entering into a building and structure is always a crime of violence.

In the 11th Circuit and in the 10th Circuit, in *US v. Spell* in the 11th Circuit, and *US v. Smith* in the 10th Circuit, those were breaking and enterings into commercial buildings.

Now, in the First Circuit, there is a case, *US v. Fiore*, which I believe came out of Rhode Island, that extended to commercial buildings, breaking and entering of commercial buildings, extended the violent crime status to the breaking and entering of commercial buildings. Those two cases from the 11th and 10th Circuit did not extend that status to commercial buildings, instead just stated it has to be a dwelling.

THE COURT: Under the statute or the guidelines?

MR. FITZGERALD: Your Honor, that, I'm not sure of. I would have to go back to read it specifically, but I thought it was for 924(e).

THE COURT: Are you familiar with all those cases, Mr. Chafee?

MR. CHAFEE: I am not, your Honor.

THE COURT: All right. Continue, please. But in *Fiore*, your Honor, at least in the First Circuit,

it's not just dwellings. It's dwellings and commercial buildings. That's what *Fiore* did. It said in commercial buildings.

In *Peterson*, *US v. Peterson*, that was a breaking and entering under a different statute in Rhode Island, different state statute, which was a breaking and entering without any criminal intent. And the First Circuit said that was not a crime of violence because it didn't have the intent to commit a crime inside, and I think that tracks along with *Taylor*.

There is another case, your Honor, *US v. Dwano*. And in *Dwano*, the First Circuit did not extend the crime of violence to breaking and entering into vehicles.

So what I'm getting at, your Honor, is there's a number of different breaking and enterings in different structures, some of them crimes of violence and some of them not.

So I think what the cases, if you look at all of them together, they look at two different things basically, what's the type of structure that's broken into, and whether or not there was an intent and what was the intent.

Now, in this statute, the breaking and entering of other buildings, 11-8-5 under Rhode Island General

Laws, it includes not only breaking and entering into structures, but also to vessels, tractor-trailers, railroad cars, things that are, obviously, not crimes of violence. And the intent here in this statute is just, the statute is just breaking and entering into other buildings with criminal intent, not felonious intent, and I think that's a difference that the Court should consider here.

Looking at the structure, your Honor, the only thing we know about the structure is what's in the plea colloquy, a steel storage shed. There is no description of the size of this shed. There's no description whether it's movable or permanent. And we don't know how big it is. And I think all of those things the Court should consider. And I'll use this as an example. Down the street from where I live, there is a pool, a pool store. It sells pools and pool supplies and all that. And on their property, they have a couple of tractor-trailers sitting on the wheels. They store things inside those just sitting there, free-standing. And next to those they have a couple of Conex boxes. And a Conex box, your Honor, is basically a trailer without the wheels. It would run on a flatbed with the truck, they would take it off the truck and put it on the ground. The only difference

between those two is the wheels. But it's clear to me, if somebody breaks into the tractor-trailer next to that Conex box, that's not a crime of violence simply because there's wheels on it.

What I'm getting at is this steel storage shed is a lot more like that Conex box. It shouldn't be a crime of violence. It's not a -- well, we don't know what it looks like. We don't know if it's a permanent structure. We don't know if it's a movable structure, and we don't know how big it is.

One of the other cases that I attached on there is a case out of the 9th Circuit, *US v. Sparks*, and Mr. Sparks was found guilty of breaking into storage lockers. Now, in the Ninth Circuit, they drew a line saying that a storage locker wasn't big enough to fit a person inside of it, and, therefore, it wasn't a crime of violence. Here we don't know how big that storage shed is, and without that information, I don't think that the Court can determine, based on the record you have before you, I don't think that you can determine that this is a structure that fits the burglary statute or the burglary definition.

THE COURT: Has the charging document been provided to the Court? I don't recall seeing it.

MR. FITZGERALD: Your Honor, this was a waiver

of information. So I believe there is no charging document, essentially.

THE COURT: Mr. Chafee, do you have any response, very briefly, to what Mr. Fitzgerald has said?

MR. CHAFEE: Your Honor, the judgment of conviction and commitment is provided. If your Honor wants to look at what he was convicted of, B & E of other buildings with intent to commit larceny --

THE COURT: Where was that?

MR. CHAFEE: That's in my response, and also in the original memorandum from the defendant, your Honor.

THE COURT: Oh, yes, I see it.

This is an issue that continues to plague this Court and other courts, and every time it seems that we have some definitive rules that we get a different factual situation, slightly different wrinkle. And this case, as I said, the threshold question -- one of the sources of the problem here, as I've already stated, is the difference, very slight though it might be, the difference in wording between the guidelines and the statute.

Under the guidelines, in order for an offense to be a violent felony, if it's a burglary, it must involve a burglary of a dwelling house, or the

alternative, it otherwise involves a substantial risk of physical injury to another.

Under the statute as construed by the Supreme Court in *Taylor*, there is no requirement that a dwelling house be involved. *Taylor* says that unlawful entry into a building or other structure with intent to commit a crime constitutes a burglary, it's a violent felony. And the statute also contains the alternative definition of violent felony, which is a crime that otherwise involves a substantial risk of bodily injury.

So the threshold question in this cases, since the statute calls for a mandatory minimum that exceeds what the guideline range would be, and the statute obviously trumps the guideline, the first question is is this offense, the one described in paragraph 35, a violent felony within the meaning of the statute.

Now, the statute says that a violent felony means any crime punishable for a term exceeding one year that, and I'll read just the relevant portion here, "that is burglary." So there is no question that under the statute, burglary is a violent felony.

The Supreme Court in *Taylor* said that an offense, no matter how it's denominated under state law, is a burglary if two requirements are satisfied. First, if it involves an unlawful entry into a building

or other structure; and second, that it involves an intent to commit a crime. So under the statute, as I've said, the structure doesn't have to be a dwelling.

Now, to determine whether those requirements are satisfied in a particular case, the Court is supposed to look at the statute to determine what the statutory elements of the offense of conviction are, and in a case where the statute is ambiguous or covers more than one type of offense, then the Court goes beyond that to look at the charging documents and the plea colloquy.

In this case, the statute under which Mr. Bennett was convicted was Section 11-8-5 of the Rhode Island General Laws, and that statute is ambiguous in that it can be violated in one of two ways. One offense described in the statute is breaking and entering in the nighttime with intent to commit larceny or any felony or misdemeanor in a barn, stable, carriage house or other building.

The other way in which the statute can be violated is breaking and entering at any time into a railroad car or trailer or tractor-trailer.

The breaking and entering into a railroad car or tractor-trailer would not a violent felony as defined in *Taylor* because there's no requirement in the statute that -- well, excuse me. Let me take that back a

moment. I guess there is a requirement in the statute that there be an intent to commit larceny or another crime.

In any event, the plea colloquy clarifies which portion of the statute that Mr. Bennett was convicted of, it's obviously the first part.

As Mr. Chafee has pointed out during the plea colloquy, the prosecutor's proffer was that the state would prove that Mr. Bennett entered a steel storage shed in the nighttime with intent to commit larceny. So that clearly is the part of the statute under which he was convicted, and those elements satisfy the *Taylor* definition as to what constitutes a violent felony. So that is the end of the inquiry. I think *Taylor* makes it clear that that is a violent felony for purposes of Section 924(e), and we don't need to get to the other potential questions as to whether -- or the other potential question as to whether or not the offense otherwise involves a substantial risk of injury to other persons.

At this time, Mr. Bennett, you have the right to address the Court and say anything that you think ought to be considered in determining your sentence. Is there anything that you would like to say?

THE DEFENDANT: I apologize, your Honor. I'm

sorry. I love you, Gwen.

THE COURT: Mr. Fitzgerald, is there anything further you have to say?

MR. FITZGERALD: No, your Honor. It's all in my memos.

THE COURT: Mr. Chafee?

MR. CHAFEE: No, your Honor.

THE COURT: Well, there's nothing much the Court can say. The sentence has been determined by the statute. There's a mandatory minimum sentence here, and, certainly, the Court sees no need or any basis for imposing a sentence greater than the statutory minimum.

So I hereby commit you to the custody of the Attorney General, Mr. Bennett, for a period of 180 months. And I'll ask the clerk to note on the judgment form the Court's recommendation that Mr. Bennett be assigned to an institution that can provide him with treatment for the diabetes and high blood pressure from which he suffers, as well as a treatment program for alcohol and substance abuse, which have been problems for him on and off over the years.

Following the completion of your sentence, Mr. Bennett, I place you on supervised release for a period of five years, and as condition of your supervised release, I hope it won't be necessary at

that time, but for your own good, I'll require that you participate in a program of substance abuse counseling and treatment, a program to be determined by the probation officer, which may include testing up to 72 times per year.

I'm not going to impose any fine, because it doesn't appear that you have any assets with which to pay a fine, but I am required to impose a special assessment in the amount of $100.

You have a right to appeal your sentence, Mr. Bennett. I think you should appeal. I'm not suggesting that I think your appeal would be successful, but you have nothing to lose by appealing, and you should appeal your sentence. In fact, I'm going to, unless you tell me otherwise, Mr. Bennett, or Mr. Fitzgerald, I'll instruct the clerk to enter a notice of appeal now.

MR. FITZGERALD: That would be good. Thank you, your Honor.

THE COURT: I instruct the clerk to file a notice of appeal on Mr. Bennett's behalf, and as you know, Mr. Fitzgerald, unless and until the Court of Appeals appoints someone else to represent Mr. Bennett on appeal, it will be your responsibility to do whatever is necessary to protect his appellate rights.

MR. FITZGERALD: Thank you.

THE COURT: Do you have anything further, Mr. Chafee?

MR. CHAFEE: No, your Honor.

THE COURT: Mr. Fitzgerald?

MR. FITZGERALD: No, your Honor.

(Court adjourned at 12:00 p.m.)

C E R T I F I C A T I O N

I, Angela M. Reynolds, RPR-FCRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Angela M Reynolds

Angela M. Reynolds, RPR-FCRR

3-9-06

Date: