# EXHIBIT C

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * *

UNITED STATES OF AMERICA C.R. NO. 05-74 T

VS. PROVIDENCE, R.I.
SEPTEMBER 15, 2005

WILLIAM J. BENNETT

* * * * * * * * * *

BEFORE CHIEF JUDGE ERNEST C. TORRES
(Change of Plea Hearing)

APPEARANCES:

FOR THE GOVERNMENT:
ZECHARIAH CHAFEE, ESQ.
U.S. Attorney's Office
Fleet Center
50 Kennedy Plaza
Providence, RI 02903
528-5477

FOR THE DEFENDANT:
KEVIN J. FITZGERALD, ESQ.
Federal Defender's Office
10 Weybosset St.
Suite 300
Providence, RI 02903
528-4281

Court Reporter:
JOSEPH A. FONTES
One Exchange Terrace
Providence, RI 02903
561-452-7507

Proceeding reported and produced by computer-aided stenography

SEPTEMBER 15, 2005 - MORNING SESSION

THE COURT: Good morning.

THE CLERK: This is Criminal Case 05-74 T, United States of America versus William J. Bennett.

THE COURT: This case is here for the entry of a plea. Mr. Chafee, would you begin, please, by summarizing the nature of the offense, the elements the Government would be required to prove in order to obtain a conviction, the maximum penalties that could be imposed if the guilty plea is accepted, and the terms of the plea agreement.

MR. CHAFEE: Your Honor, this is a one count indictment charging -- the charge, felon in possession of a firearm. The elements of this case are that the defendant, William J. Bennett, in the District of Rhode Island, after having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting commerce, which means the gun at some point in its existence has crossed state lines, and that it was a firearm, in this case a Jennings .9 millimeter handgun.

The plea agreement is that the defendant would plead guilty to this indictment, 18 USC 922(g)(1). The Government, in return, will recommend that the Court impose a term of imprisonment at the low end of the range of sentences as the Court determines under the U.S. Sentencing Guidelines. The Government agrees to recommend a 2 level decrease in

guideline points for acceptance of responsibility. The Government agrees that the defendant has timely notified the authorities of his intention to plead guilty, and so we will recommend that he receive the third point deduction. So that's -- basically, that is the plea agreement.

Now the penalties, there's going to be an argument between counsel and -- the defense counsel and the Government over the defendant's record. But these are what the penalties could be: The maximum penalty under 18 USC 924(e)(1), if he's found to be under that statute, the maximum penalty is life imprisonment and a minimum term of 15 years, 5 years of supervised release and up to life, a $250,000 fine, and a special assessment of $100.

Now if he's not found under -- to fall under 924(e)(1), the sentence would be a maximum term of imprisonment of 10 years, a maximum fine of $250,000, a maximum term of supervised release of three years, and there would also be a $100 special assessment.

THE COURT: What's the nature of the dispute that would determine whether or not he's under 924(e)(1) or not?

MR. CHAFEE: I think it was going to be about whether one of the burglaries falls under the category of violent felon.

THE COURT: Is this an armed career criminal issue? Is that the --

MR. CHAFEE: Yes, yes.

THE COURT: All right. Mr. Fitzgerald, do you agree that Mr. Chafee has accurately summarized the nature of the charge, the elements the Government would be required to prove, the maximum penalties that could be imposed, and the terms of the plea agreement?

MR. FITZGERALD: Yes, your Honor.

THE COURT: All right. I'll ask the defendant to stand up please, and the Clerk will administer the oath.

THE CLERK: Raise your right hand, please.

WILLIAM J. BENNETT, SWORN

THE DEFENDANT: I do.

THE CLERK: Please state your name and spell your last name for the record.

THE DEFENDANT: William J. Bennett, B-E-N-N-E-T-T.

EXAMINATION BY THE COURT:

Q. All right. Mr. Bennett, do you understand that you're now under oath, and that if you do not answer my questions truthfully you could be prosecuted for perjury or making a false statement?

A. Yes, your Honor.

Q. How old are you?

A. 40.

Q. And what's the last grade of school that you completed?

A. I think it was fifth.

Q. Fifth?

A. Yes.

Q. Why did you leave school after the fifth grade?

A. I went to -- they just kept passing me. I left when I was 15 and-a-half, I think it was. I don't quite remember. I was in seventh, but I got about a fifth grade level where I'd been tested.

MR. FITZGERALD: Your Honor, if I can, Mr. Bennett is basically illiterate. He does have some learning disabilities which I don't have all the details on at this point. I had to read all the documents to him. But that's a part of the reason that he left school.

THE COURT: Okay.

Q. Did your difficulty in school come because of just that you were slow in learning things, or did you have some mental or emotional problem that was preventing you from doing well in school?

A. Mental and emotional.

Q. Have you ever been treated for any mental illness or anything like that, any emotional problem?

A. No.

Q. What kind of emotional problem did you have?

A. When I was in grade school, I was molested by a man in the school, in the bathroom, your Honor.

Q. So that affected your ability to learn in school?
A. Yes.
Q. Now --
A. I don't like being around people.
Q. What's that?
A. I don't like being around people too much.
Q. Are you able to read and understand English?
A. A little bit, your Honor. Not, you know -- I can read somewhat. Big words, I don't know too good.
Q. Okay. Let's take those separately. Let's take the reading first. You can read a little bit, you say?
A. Yes.
Q. All right. What about understanding English when people talk to you, do you understand what they say?
A. Yeah, I understand some. Yes.
Q. Okay. So your problem mainly is just in reading, you have some problem.
A. Spelling and reading, and stuff like that.
Q. All right.
A. Math.
Q. Okay. Have you ever been treated for any addiction to a drug or alcohol?
A. No, I haven't, your Honor. I have addiction.
Q. You do have an addiction?
A. Yes, that's what got me here. I was drinking real

heavy and doing pills and doing coke. I was out for 5 and-a-half years. I stayed out of trouble for 5 and-a-half years and an old friend come back from New York and I started drugging and alcoholing again, and that's what got me here.

Q. So you had stopped for awhile, then you started again?

A. Yes.

Q. When did you start again of using alcohol and drugs?

A. About 6 -- about 8 months ago, I think it was. Just before I got arrested.

Q. All right.

A. When I was abusing it bad.

Q. How long ago were you arrested?

A. Umn, March. March 9th.

Q. Okay. So that's about five months ago?

A. Yes, sir.

Q. So you were on a binge for about three months?

A. Yes, sir.

Q. Have you consumed any drugs or alcohol since the time of your arrest?

A. Just my diabetes medicine and the medicine the psychologist is giving me.

Q. Okay. I'm talking right now about illegal drugs or alcohol?

A. Oh, no, sir.

Q. Now, Mr. Fitzgerald has submitted a statement to the Court about the medications that you're taking now. Have you seen that list?

A. Well --

MR. FITZGERALD: Your Honor, actually I haven't shown him the list. It came from the doctor.

THE COURT: I'm having a little trouble reading your writing, Mr. Fitzgerald. Can you just repeat for both of us what those medications are and what the dosages are?

MR. FITZGERALD: I'll do my best, your Honor. It's actually the doctor's writing.

THE COURT: Oh.

MR. FITZGERALD: So I apologize. I believe it is Lisinopril for 10 milligrams a day. That's the high blood pressure medication. Doxepin, 25 milligrams at bedtime, and I believe that's an antianxiety medication.

THE DEFENDANT: But he upped that to 75.

MR. FITZGERALD: Okay. I'm sorry, I can't -- I believe the next one is Benadryl.

THE DEFENDANT: Yeah, that's true.

MR. FITZGERALD: Which would help him sleep.

THE DEFENDANT: Sleep, yes, because I don't sleep.

MR. FITZGERALD: On the right-hand side, I can't make out the first one.

THE DEFENDANT: 500 milligrams, that would be my glush -- glucophage.

MR. FITZGERALD: Glucophage.

THE DEFENDANT: Glucophage. There you go.

MR. FITZGERALD: That's for diabetes?

THE DEFENDANT: Diabetes, yeah. For my diabetes.

MR. FITZGERALD: Then there's Lovastatin?

THE DEFENDANT: No, Lovastatin. That's for Cholesterol. Is that 10 milligrams?

MR. FITZGERALD: Yes.

THE DEFENDANT: My Cholesterol.

MR. FITZGERALD: And the last one is Prilosec which would be for --

THE DEFENDANT: Yes, acid. My stomach. Acid reflux.

THE COURT: Okay.

Q. Are those all the medications you're taking, Mr. Bennett?

A. Yes, your Honor.

MR. FITZGERALD: Your Honor, if I could, he's taking an additional medication.

THE DEFENDANT: Oh, yes.

MR. FITZGERALD: Over the past two weeks he's developed an additional illness which we can talk about at the end, I think, but he's taking an antibiotic on top of the

rest of these. I just found out about that this morning.

THE COURT: Okay.

Q. According to this document, Mr. Bennett, the doctor who prescribed these medications feels that these medications do not affect your ability to think clearly or understand things. Do you agree with that?

A. Yes, sir.

Q. Are you able to think clearly and understand what's going on here this morning?

A. Yes.

Q. Have you received a copy of the indictment that contains the charge against you in this case?

A. Yes, it's right here.

Q. Yes. You've seen that before?

A. He just showed it to me, yes.

Q. All right. Have you read it and discussed it with Mr. Fitzgerald?

A. Mr. Fitzgerald read it to me. He read it to me.

Q. He read it to you?

A. Yes.

Q. Did he explain to you exactly what you've been charged with and what things the Government would have to prove in order to convict you of that charge?

A. Yes. He said, yeah, possessing of a gun, and prior conviction.

Q. He explained to you that the basic charge here is that you possessed a firearm after you had been convicted of a felony?

A. Being a felon, yes.

Q. Did you hear Mr. Chafee explain a few minutes ago what the charge is and what things the Government would have to prove in order to convict you?

A. Yes, your Honor.

Q. Do you understand the charge?

A. Yes, your Honor.

Q. And do you understand what would have to be proven in order to convict you of that charge?

A. Yes, your Honor.

Q. Are you completely satisfied with the representation that Mr. Fitzgerald has provided as your attorney in this case?

A. Yes, your Honor.

Q. The Court has been provided with a document that is labeled plea agreement, it's seven pages long and appears to have your signature on the last page. Is that your signature?

A. Yes, sir.

Q. All right.

A. Yes, your Honor.

Q. And before you signed that document, did you read

it, or did Mr. Fitzgerald read it to you?
A. Mr. Fitzgerald read it to me.
Q. Is that right?
A. Yes.
Q. Did Mr. Fitzgerald explain to you what that document says, and what the significance of signing it is?
A. Yes, he did, your Honor.
Q. Do you understand what that document says?
A. Yes.
Q. Does that document accurately describe the agreement that you have with the United States Attorney's Office?
A. Yes.
Q. Does it leave out anything that you think is part of the agreement?
A. No, no.
Q. Okay. Has anybody made any other promises to you besides the promises contained in that document? Has anybody made any other promises to you that have caused you to decide to plead guilty to this charge?
A. No, your Honor.
Q. Has anybody made any threats of any kind against you that caused you to decide to plead guilty?
A. No, your Honor.
Q. So is it correct then, Mr. Bennett, that you're

making this decision voluntarily because you think it's in your best interest?

A. Yes, your Honor.

Q. Now do you understand, Mr. Bennett, that this agreement, this plea agreement, is an agreement between you and the United States Attorney. The Court is not involved in this in any way. In other words, the United States Attorney has made certain promises to you, and they have to keep those promises, but the Court is not making any promises to you, do you understand that?

A. Yes, your Honor.

Q. So, for example, that means the Court doesn't have to accept any recommendations that the United States Attorney makes. The Court makes an independent decision about what sentence you are to receive. Do you understand that?

A. Yes, your Honor.

Q. Also, do you understand, as Mr. Chafee earlier said, and as is set forth in your plea agreement, you understand that if your guilty plea is accepted -- well, first of all, as Mr. Chafee indicated, there's going to be some disagreement here between the United States Attorney and Mr. Fitzgerald as to what guideline range applies in your case, whether you do have enough previous convictions to classify you as an armed career criminal or not, and that will make a difference in your guideline range. Do you

understand that?

A. Yes, your Honor.

Q. But do you also understand that if your guilty plea is accepted, you could receive a sentence of at least 15 years and up to life in prison if you're found to be an armed career criminal, and followed by a period of supervised release of at least 5 years and up to life, a fine of up to $250,000, and a special assessment of at least $100. And if you're not an armed career criminal, if you're not found to be an armed career criminal, then your sentence would be -- could be up to 10 years in prison followed by up to three years of supervised release, a fine of up to $250,000, and a special assessment of $100. You understand that?

A. Yes, your Honor.

Q. Do you also understand that if your guilty plea is accepted, you can't change your mind later and withdraw the plea unless the Court allows you to do that?

A. Yes, your Honor.

Q. And do you understand that you're not required to plead guilty, that you have a right to plead not guilty?

A. Yes.

Q. And do you understand that by pleading guilty you would be giving up a number of rights that you otherwise would have?

A. Yes.

Q. Do you remember reading, or having read to you, in the plea agreement, what those rights are?

A. Yes.

Q. Did Mr. Fitzgerald explain those rights to you?

A. Yes, he did, your Honor.

Q. Just to be sure there's no misunderstanding, I'm going to go over those rights briefly, and I'm going to also explain to you the difference between what happens if you plead guilty and what happens if you plead not guilty. First of all, if you plead not guilty, which you have a right to do, you would be entitled to a trial before a jury if you wish, and at the trial the Government would have to present evidence that proves you guilty beyond a reasonable doubt. At the trial, you'd have the right to be represented by an attorney. If you could not afford an attorney, the Court would appoint an attorney to represent you without charge to you. At the trial you'd have the right to question or cross-examine any witnesses that the Government might present to testify against you. You could present witnesses who you think would testify in your favor. You could testify yourself, if you wanted to, but you couldn't be forced to testify against your wishes. And if a jury should find you guilty, you would have a right to appeal not only any sentence that the Court might impose, but you also could appeal claiming that a mistake had been made, and you're

really not guilty. On the other hand, if your guilty plea is accepted, there won't be any trial. The Government won't have to present evidence to prove you guilty because you will have admitted your guilt, and you may or may not be entitled to appeal your sentence, but you wouldn't have a right to appeal claiming that you're not guilty because you will have admitted your guilt. Do you understand, first of all, what all those rights are that I mentioned?

A. Yes, your Honor.

Q. And do you understand the difference between what happens if you plead guilty as opposed to what happens if you plead not guilty?

A. Yes, your Honor.

THE COURT: All right, you may be seated, Mr. Bennett. I'm going to ask Mr. Chafee to briefly summarize the facts that he says the Government would be able to prove if this case went to trial, and when he finishes I'm going to ask you whether you agree that all those things are true, and that the Government would be able to prove them.

MR. CHAFEE: Your Honor, I believe the evidence would be that in Westerly, Rhode Island, the defendant came to the home of a Mack Hindle and sold him for $200 a Jennings .9 millimeter firearm, Serial Number 1330875, and after he was arrested he admitted that he had done that. He had previously been convicted of a crime punishable by a term of

imprisonment exceeding one year in 1985. He -- the gun was a working firearm, and it had not been made in Rhode Island. Thus it had crossed the state line prior to this defendant having it in his possession and selling it.

THE COURT: All right. Mr. Bennett, would you stand up, please?

Q. Did you hear everything that Mr. Chafee said?

A. Yes, your Honor.

Q. Do you agree that all those things are true, and that if this case went to trial the Government would be able to prove it?

A. Yes, your Honor.

Q. All right. Having heard everything that you've been told about the nature of the charge against you, the things that the Government would have to prove in order to convict you, the maximum penalties that could be imposed if your guilty plea is accepted, and the rights that you're giving up by choosing to plead guilty, and everything else that you've been told, do you still wish to plead guilty to this charge?

A. Yes, your Honor.

THE COURT: All right, you may be seated, Mr. Bennett. The Court finds the defendant is fully competent. He's capable of entering an informed plea. He understands the nature of the charges, the elements that must

be proven, the maximum penalties that could be imposed, and the rights that he is relinquishing. The Court also finds his decision to plead is a voluntary decision, and that there is a factual basis for the plea as set forth in the Government's proffer. Therefore, the Court accepts the plea of guilty and hereby adjudges the defendant guilty of the offense charged in this indictment. Sentencing is scheduled for Friday December 16 at 11 a.m. Prior to that time, Mr. Bennett, someone from the probation office will want to talk with you to gather facts for the presentence report. You can have Mr. Fitzgerald present at that time when that interview takes place. And after the report is completed, you will have a right to review it, to discuss it with Mr. Fitzgerald, and if you believe the report is incorrect, you have a right to object to the report, or whatever parts you think are incorrect. Mr. Fitzgerald can help you decide whether you want to object and, if so, he can file an objection on your behalf. If you wish to object to the report, the objection has to be submitted in writing within fourteen days from the date the report is first made available for your review. It's not fourteen days from the date that you actually read it or discuss it with Mr. Fitzgerald. It's fourteen days from the date the report is made available to you. If you don't object within the fourteen day period, the Court will consider you to have

waived or forfeited your right to object, and it will treat whatever is in the report as being correct. In other words, after the fourteen days, it's too late to object to the report. Do you understand what I just said?

A. Yes, your Honor.

Q. Also, on the date set for sentencing, you have a right to address the Court and say anything that you think ought to be considered in determining your sentence. Mr. Fitzgerald will have a chance to speak on your behalf, also. You're not required to say anything, but if you want to say something, you can, or you can let Mr. Fitzgerald do all the talking for you. That's entirely up to you. Do you have anything further, Mr. Chafee?

MR. CHAFEE: No, your Honor.

THE COURT: Mr. Fitzgerald?

MR. FITZGERALD: Your Honor, as I convoluted to before, Mr. Bennett is having some additional medical issues, and I just want to bring it forward to the Court right now. He indicates to me that he is not retaining any food in his system. It's going right through him, and he also has blood in his urine. This has been going on for about two weeks. He has tried to get treatment from the authorities at Wyatt, which has resulted in the antibiotics, however, he's indicated to me he's gone back several times complaining about the continuation of this blood in his urine, and

nothing has been done at this point. I could tell you that the antianxiety medication, and the other medications that he's taking now, resulted from, initially from me writing a letter to the authorities there saying that he needed to be seen and treated because he was having difficulty adjusting to the facility at Wyatt. In any case, though, I haven't -- I just heard about this today. I haven't had a chance to address it that way, but I'm kind of concerned about Mr. Bennett's physical condition right now.

THE COURT: Have you talked personally to any of the medical personnel or the officials at Wyatt?

MR. FITZGERALD: Not about this situation, no. The original complaint, yes.

THE COURT: And in response they started giving him an antibiotic?

MR. FITZGERALD: That's the medical situation I have not talked to them about because I just found out today.

THE COURT: All right. Well, I think that's probably a starting point is to talk to them, and if you get no response or satisfaction, then bring it up to the Court. Marshal Moore, do you know anything about this?

THE MARSHAL: This is the first I'm hearing anything about this. I don't know his background.

MR. FITZGERALD: Your Honor?

THE COURT: Could you make inquiry when Mr. Bennett

is transported back to the Wyatt facility and see if somebody can pick up the ball on this?

THE MARSHAL: Will do.

THE COURT: Mr. Fitzgerald, you do the same. And if there's a problem, you can come back to the Court.

MR. FITZGERALD: Okay. Your Honor.

THE COURT: All right. Is there anything else?

MR. FITZGERALD: No, your Honor. Thank you.

THE COURT: All right. The Court will be in recess.

THE CLERK: Please rise.

( R E C E S S)

C E R T I F I C A T I O N

I hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Joseph A. Fontes

JOSEPH A. FONTES

June 6, 2006

Date